**FILED**
**Sep 04, 2019**
**02:16 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **DONALD THOMAS,** | ) | **Docket No.: 2018-08-0604** |
| **Employee,** | ) | |
| **v.** | ) | |
| **SALMON BROTHERS, LLC,** | ) | **State File No.: 22160-2018** |
| **Employer,** | ) | |
| **And** | ) | |
| **ACE AMERICAN INS. CO.,** | ) | **Judge Deana Seymour** |
| **Carrier.** | ) | |

---

### EXPEDITED HEARING ORDER

---

The Court conducted an Expedited Hearing on August 15, 2019, to address Mr. Thomas's claim for additional temporary disability benefits.[1] Salmon Brothers asserted he was not entitled to the requested benefits because it was owed a credit against the temporary disability for mistaken mileage payments.[2] The Court rejects Salmon Brothers's argument and holds Mr. Thomas established likelihood of success at a hearing on the merits regarding his request for additional temporary disability benefits.

### History of Claim

Mr. Thomas injured his back at Salmon Brothers. He received authorized treatment from Drs. John Hayes and Thomas Giel.

From March 27 to April 3, Dr. Hayes restricted Mr. Thomas from driving due to functional limitations. On April 3, Dr. Hayes released Mr. Thomas to full duty. A week later Mr. Thomas returned to Dr. Hayes. During that visit, Dr. Hayes again restricted Mr. Thomas from driving.

---

[1] The parties agreed to a compensation rate of $911.66.

[2] Salmon Brothers initially denied that any additional temporary disability benefits were owed. However, at the hearing, it agreed it owed temporary disability benefits in the amount of $862.33.

1

Dr. Giel began treating Mr. Thomas on April 26 and restricted him to "[n]o lifting over 40 lbs." On May 24, Dr. Giel released Mr. Thomas to full duty.

At the hearing, Mr. Thomas introduced work-status forms noting his restrictions from March 27 to April 2 and from April 10 to May 24. He also introduced check stubs showing temporary disability payments for those periods. The stubs indicated Mr. Thomas received benefits from March 30 to April 2 and from April 20 to May 24.[3]

Mr. Thomas testified he started a light-duty position in April making $9.00 per hour and that he worked in this light-duty capacity for 94.5 hours over a five-week period. On cross-examination, he denied working for any company other than Salmon Brothers.

For its part, Salmon Brothers agreed it owed Mr. Thomas $1,059.99 in unpaid temporary disability benefits from April 10 through April 20. It also admitted a weekly shortfall of $10.33 in temporary partial disability benefits paid between April 20 and May 24, which totaled $51.65 for the five-week period ($10.33 x 5 = $51.65). However, Salmon Brothers contended it mistakenly paid Mr. Thomas $249.31 for mileage reimbursement. Specifically, it argued Mr. Thomas's mileage requests showed his medical providers were within fifteen miles of his residence or workplace. Tenn. Code Ann. § 50-6-204(a)(3)(I)(6)(A) (2018). Further, Salmon Brothers argued Mr. Thomas was concurrently employed by XPO Logistics where he earned an average weekly wage of $254.51, which should be considered in calculating the amount of temporary disability benefits it owed.[4]

In its calculations, Salmon Brothers considered its total *underpayment* of $1,111.64 ($1,059.99 + $51.65) and its *mistaken payment* of $249.31 for mileage of $249.31. Based on these calculations, Salmon Brothers contended it owed Mr. Thomas $862.33 in additional temporary disability benefits ($1,111.64 - $249.31).

### Findings of Fact and Conclusions of Law

At an Expedited Hearing, Mr. Thomas must provide sufficient evidence that he would likely prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

---

[3] The first payment totaled $520.95 for March 30 to April 2 and the second payment totaled $3,658.30 for temporary benefits at a weekly rate of $731.66 from April 20 to May 24.

[4] Mr. Thomas testified that the XPO Logistics pay stubs introduced into evidence as Exhibit 3 were connected to a subcontract Salmon Brothers had with XPO. He stated that he might have driven the routes under the subcontract, but he did not receive the money documented in the stubs. Instead, that money went to Salmon Brothers for running the route for XPO.

In considering Mr. Thomas's request for additional temporary disability benefits, the Court first notes his medical providers never totally restricted him from work. Instead, they placed him on restricted duty. Thus, his recovery, if any, is in temporary partial disability benefits (TPD). These benefits are payable during the time the injured worker is able to resume some gainful employment but has not reached maximum recovery. *Barrett v. Lithko Contracting, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 70, at *8 (June 27, 2016). To prove entitlement to these benefits, Mr. Thomas must show his treating physician released him to return to work with restrictions before maximum medical improvement, and Salmon Brothers either (1) could not return him to work within his restrictions or (2) could not provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than his average weekly wage on the date of his injury. *See Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7-8 (Dec. 11, 2015).

Here, Mr. Thomas established his medical providers restricted his work activities from March 27 to April 2 and from April 10 to May 24. He received temporary disability benefits from March 30 to April 2 and from April 20 to May 24. However, Mr. Thomas never received temporary disability benefits from April 10 to April 19. Salmon Brothers agreed Mr. Thomas should have received temporary disability benefits during this period. Therefore, the Court finds Mr. Thomas is likely to prevail in proving entitlement to these benefits.

However, the Court declines to use information from the XPO pay stubs to calculate Mr. Thomas's temporary disability benefits as Salmon Brothers suggested. Mr. Thomas explained that the pay stubs introduced into evidence were connected to a subcontract Salmon Brothers had with XPO. He testified that these stubs did not document any compensation he received that would indicate the wages he might have earned in his disabled condition. Salmon Brothers failed to show otherwise.

Thus, the Court relies on Mr. Thomas's testimony in calculating his TPD from April 10 to April 19. According to Mr. Thomas, he earned $9.00 per hour for 94.5 hours total over a five-week period encompassing these dates. Thus, he earned approximately $170.10 per week in this role.

Considering these average weekly earnings, the Court turns to Tennessee Code Annotated section 50-6-207(2)(B), which states that TPD is two-thirds of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition. Applying that formula, Mr. Thomas is entitled to $798.66 per week in TPD benefits ($1,367.49 - $170.10 = $1,197.39 x .667 = $798.66), and for the ten-day period between April 10 and April 19, he is entitled to $1,140.94 ($798.66 ÷ 7 = $114.09 x 10 = $1,140.94).

Further, since Salmon Brothers only paid Mr. Thomas at a weekly rate of $731.66

for April 20 through May 24, the Court finds he is likely to prevail in proving a shortfall of $67.00 per week ($798.66 - $731.66 = $67.00), which totals $335.00 for that five-week period. Adding $1,140.94 for April 10 to April 19 and $335.00 for underpayment between April 20 and May 24, the Court holds that Mr. Thomas is entitled to $1,475.94 in TPD.

Turning to Salmon Brothers's request for a credit due to mistaken mileage payments, the Court finds Mr. Thomas was not entitled to mileage payments. Specifically, the evidence presented failed to show that any of his medical providers were located outside a radius of fifteen miles from Mr. Thomas's residence or workplace. *See* Tenn. Code Ann. § 50-6-204(a)(3)(I)(6)(A).

However, the Court holds that Salmon Brothers did not establish the amount of an alleged credit for its mistaken mileage payments. The only documentation presented related to mileage payments was a check stub indicating that Mr. Thomas received $67.21 in travel expenses. Salmon Brothers claimed that it paid an additional $249.31 in mileage to Mr. Thomas, but it provided no evidence of this payment.

Salmon Brothers also failed to establish that it is entitled to a credit against Mr. Thomas's temporary disability benefits. It cited *McCall v. Nat'l Health Corp.*, 100 S.W.3d 209, 213 (Tenn. 2003), as authority for the Court to order an employee to reimburse an employer for any improperly paid benefits. Acknowledging that *McCall* does not directly address erroneously paid mileage, Salmon Brothers contended that the overpaid benefits in that case (temporary disability benefits) were analogous. The Court does not necessarily disagree.

Instead, the Court observes that credits for improperly paid benefits are calculated against permanent, not temporary benefits. Tennessee Code Annotated section 50-6-207(2)(C) allows a credit against permanent disability if an employer pays temporary disability benefits after the date the employee reached maximum medical improvement. Tennessee Code Annotated section 50-6-207(1)(B)(ii) allows a credit against the permanent award when an employer continues paying the employee's regular wage during a period of temporary disability. Courts have also ordered credits against permanent disability where an employer initially miscalculated the injured employee's compensation rate. *See Jones v. Crenshaw*, 645 S.W.2d 238, 241 (Tenn. 1983). Salmon Brothers points to no authority allowing a credit against temporary disability for mistaken mileage payments. Therefore, the Court denies its request for a credit for mileage payments against the award of temporary disability benefits at this interlocutory stage.

**IT IS, THEREFORE, ORDERED** as follows:

1. Salmon Brothers's request for a credit is denied, and Mr. Thomas is entitled additional temporary disability benefits of $1,475.94.

2. This case is set for a Scheduling Hearing on **October 28, 2019, at 8:30 a.m. central time.** You must call toll-free at 866-943-0014 to participate in the Hearing. Failure to call might result in a determination of the issues without your participation.

   **ENTERED September 4, 2019.**


_____
**JUDGE DEANA C. SEYMOUR**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:
1. Work Activity Status Reports from Concentra Medical Centers, March 27, 2018, to April 26, 2018 (Collective)
2. Check stubs for temporary disability benefits and mileage payments paid between April 9, 2018, and May 25, 2018 (Collective)
3. XPO Logistics pay stubs, March 11, 2018, to April 14, 2018
4. Receipt for faxes sent by Mr. Thomas on June 29, 2018
5. Final Medical Report, dated July 11, 2019
6. Mileage requested by Mr. Thomas

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Order on Show Cause Hearing
4. Request for Expedited Hearing, with attached Affidavit of Donald Thomas
5. Order Setting Status Hearing
6. Order Resetting Expedited Hearing
7. Employer's Pre-Hearing Brief

# CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on September 4, 2019.

| Name | Certified Mail | Fax | Regular mail | Email | Sent to |
|------|------|------|------|------|------|
| Donald Thomas, Employee | X | | X | | 1630 Portland Ave. Memphis, TN 38127 |
| Tyler Waterfield, Employer's Attorney | | | | X | tswaterfield@mijs.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal:</u>

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____  SF#: _____  DOI: _____

## Appellee(s)
**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee


Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**


## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___


[Signature of appellant or attorney for appellant]   _____


LB-1099   rev. 10/18                     Page 2 of 2                     RDA 11082



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name: _____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental   $ _____ per month

| | | | |
|---|---|---|---|
| Groceries | $ _____ per month | Telephone | $ _____ per month |
| Electricity | $ _____ per month | School Supplies | $ _____ per month |
| Water | $ _____ per month | Clothing | $ _____ per month |
| Gas | $ _____ per month | Child Care | $ _____ per month |
| Transportation | $ _____ per month | Child Support | $ _____ per month |
| Car | $ _____ per month | | |
| Other | $ _____ per month (describe: _____ ) | | |

10. Assets:

| | | | |
|---|---|---|---|
| Automobile | $ _____ | (FMV) | _____ |
| Checking/Savings Acct. | $ _____ | | |
| House | $ _____ | (FMV) | _____ |
| Other | $ _____ | Describe: | _____ |

11. My debts are:

Amount Owed        To Whom

_____      _____

_____      _____

_____      _____

_____      _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____